J-S14002-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HECTOR MALDONADO, | : | |
| | : | |
| Appellant | : | No. 1576 EDA 2013 |

Appeal from the PCRA Order May 13, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0004373-2007

BEFORE:  DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                 **FILED MARCH 10, 2015**

Hector Maldonado ("Maldonado") appeals pro se from the order entered on May 13, 2013 by the Court of Common Pleas of Philadelphia County, Criminal Division, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A prior panel of this Court summarized the relevant facts in this case as follows:

> On July 29, 2006, at approximately 6:00 a.m., Maldonado, accompanied by friends, was at the Aramingo Diner in Philadelphia.  Maldonado's table began arguing with a group at a nearby table.  The argument went on for approximately 20 minutes and required the diner manager to intervene.  During a lull in the argument, the victim, Cesar Reyes [("Reyes")], arrived at the diner, and sat in a third booth with two women and an unidentified man. Reyes and the unidentified man had words and Reyes stood up, remaining at the booth.  Shortly thereafter, Maldonado left the diner, returning a few

> minutes later. Maldonado walked over to Reyes, circled him, and said something in Spanish. He then drew a gun, placed it against the back of Reyes skull, and fired.

*Commonwealth v. Maldonado*, 2211 EDA 2008 at 1-2 (Pa. Super. May 25, 2010) (unpublished memorandum) (footnote omitted).

Police arrested Maldonado on October 19, 2006. Following a four-day bench trial, the trial court found Maldonado guilty of murder of the first degree and possessing instruments of crime.[1] The trial court sentenced Maldonado to life in prison without parole. The PCRA court summarized the remaining procedural history in this case as follows:

> Following the imposition of sentence, [Maldonado] filed a timely notice of appeal[.] … On May 25, 2010, the Superior Court issued a memorandum and order affirming the judgment of sentence. [*Id.* at 1, 8]. [Maldonado] did not file a petition for allowance of appeal.
>
> On April 6, 2011, [Maldonado] filed a timely pro se [PCRA petition]. Counsel was appointed to represent him and on March 4, 2013, counsel filed a no-merit letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988); *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and a Motion to Withdraw. On April 8, 2013, this [c]ourt, after carefully reviewing the record, [Maldonado]'s various filings, and counsel's no-merit letter, accepted counsel's letter and sent [Maldonado] a Pa.R.Crim.P. 907 notice of dismissal. On May 13, 2013, this [c]ourt issued an order denying [Maldonado] [PCRA] relief.

---

[1] 18 Pa.C.S.A. §§ 907(a), 2502(a).

> Following the dismissal of his PCRA petition, [Maldonado] filed pro se a notice of appeal and a Pa.R.A.P. 1925(b) statement.

PCRA Court Opinion, 5/6/14, at 1-2.

On appeal, Maldonado raises the following issues for our review and determination:

> I. [W]hether trial counsel was ineffective for failure to investigate, interview (and) or call witnesses who would have offered evidence that would have substantiated [Maldonado]'s diminished capacity defense?
>
> II. Being that a diminished capacity defense is extremely limited and required psychiatric testimony concerning a defendant's mental disorders that specifically affected his cognitive functions (of deliberation and premeditation) necessary to formulate a specific intent to kill, was trial counsel ineffective for failing to investigate and obtain such an expert?
>
> III. Did the lower court err by allowing counsel to withdraw and forcing [Maldonado] to proceed pro se in spite of the fact that there are issues of arguable merit in this case and that the court's decision to allow counsel to withdraw constructively denied [Maldonado] counsel during this PCRA litigation?

Maldonado's Brief at 7.[2]

We begin by acknowledging that "[o]ur standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Garcia**, 23 A.3d 1059, 1061 (Pa. Super. 2011). "The

---

[2] We reordered these issues for ease of review.

PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Id.***

The first two issues Maldonado raises on appeal allege that trial counsel was ineffective for failing to call certain witnesses at trial in support of his diminished capacity defense. At trial, Maldonado argued that he was unable to form the specific intent to kill Reyes because he had ingested alcohol and cocaine several hours prior to the shooting. N.T., 7/8/08, at 116.

"A defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 312 (Pa. 2011). Our Supreme Court has explained:

> A diminished capacity defense "does not exculpate the defendant from criminal liability entirely, but negates the element of specific intent." [***Hutchinson***, 25 A.3d at 312]. Thus, if the jury accepts a diminished capacity defense, a charge of first-degree murder is mitigated to third-degree murder. To establish diminished capacity, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. The mere fact of intoxication does not give rise to a diminished capacity defense. Likewise, evidence that the defendant lacked the ability to control his actions or acted impulsively is

> irrelevant to specific intent to kill, and thus is not
> admissible to support a diminished capacity defense.
> ***Id.***

***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1122 (Pa. 2012). "[T]o prove diminished capacity due to voluntary intoxication, a defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities." ***Commonwealth v. Padilla***, 80 A.3d 1238, 1263 (Pa. 2013), *cert. denied*, ***Padilla v. Pennsylvania***, 134 S. Ct. 2725 (2014).

In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. ***Commonwealth v. Bomar***, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." ***Id.*** (citation omitted). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. ***Id.***

> To satisfy the prejudice prong of this test when
> raising a claim of ineffectiveness for the failure to
> call a potential witness at trial, our Supreme Court
> has instructed that the PCRA petitioner must
> establish that: (1) the witness existed; (2) the
> witness was available to testify for the defense; (3)
> counsel knew, or should have known, of the
> existence of the witness; (4) the witness was willing
> to testify for the defense; and (5) the absence of the

> testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Wantz*, 84 A.3d 324, 331 (Pa. Super. 2014). The absence of witness testimony is so prejudicial as to have denied the defendant a fair trial "[w]hen an uncalled witness's testimony would have created a reasonable probability of a different outcome [at] trial[.]" *Id.* at 333.

First, Maldonado argues that trial counsel was ineffective for failing to call as additional witnesses at trial Lisa Rodriguez ("Rodriguez"), Rosa Lozada ("Lozada"), Andrew Zepeda ("Zepeda"), and Hector Hernandez ("Hernandez") in support of his diminished capacity defense. Maldonado's Brief at 16-19. At trial, in support of this defense, Nasha Maldonado ("Ms. Maldonado") and Jose Baez ("Baez") testified on Maldonado's behalf. Ms. Maldonado testified that Maldonado was drinking a "40 Corona" and a "cup of Hennessy" during a thirty to forty-five minute visit to her home approximately nine hours before the shooting. N.T., 7/9/08, at 5. Baez testified that he observed Maldonado do "two or three" shots in the afternoon the day before the shooting and later that evening, snort a line of cocaine. N.T., 7/8/08, at 118-21. Maldonado contends that each of the four above-referenced witnesses would have been able to substantiate Ms. Maldonado's and Baez's testimony and lend further support to his diminished capacity defense. *Id.* at 16-19.

We conclude that Maldonado's first ineffective assistance of counsel claim does not entitle him to any relief. Maldonado argues that Rodriguez would have testified that he admitted to her that he abused alcohol, cocaine, ecstasy, and Xanax and that he often times walked around the house screaming in the middle of the night. Maldonado's Brief at 17. Maldonado further asserts that Lozada's testimony would have corroborated Rodriguez's testimony. However, none of this testimony (including the testimony actually offered at trial) provides any indication as to Maldonado's state of mind on the night in question or at the time of the shooting. Accordingly, trial counsel was not ineffective for failing to call Rodriguez and Lozada as witnesses because the absence of their testimony was not so prejudicial as to have denied him a fair trial. *See Wantz*, 84 A.3d at 331.

Maldonado also claims that Zepeda would have testified that Maldonado was using cocaine and ecstasy and drinking heavily close in time to the shooting. Maldonado's Brief at 18. However, PCRA counsel's *Turner*/*Finley* letter indicates that after investigating, he was unable to locate the present whereabouts of Zepeda or otherwise corroborate Maldonado's claims regarding Zepeda's potential testimony. *Turner*/*Finley* Letter, 3/4/13, at 9. Thus, there is no basis on which to conclude that trial counsel's failure to call Zepeda as witness met any of the five prongs of the test explained in *Wantz*. *See Wantz*, 84 A.3d at 331; *supra*, p. 5-6.

Maldonado claims that Hernandez would have testified to Maldonado's state of mind after the shooting, as he did during Maldonado's sentencing. Maldonado's Brief at 18-19. Hernandez's testimony, however, would have likely harmed Maldonado's case. Hernandez's testimony revealed that Maldonado completely understood what he had done. **See** N.T., 7/9/08, at 90. Hernandez testified during sentencing that Maldonado was distraught and crying about having killed Reyes and that Maldonado said that he was going to regret having killed Reyes for the rest of his life. **Id.** Thus, trial counsel was not ineffective for failing to call a witness who would have potentially harmed his client's case. **See Wantz**, 84 A.3d at 331 ("To demonstrate … prejudice, a petitioner 'must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.'"). Accordingly, Maldonado's first ineffective assistance of counsel claim does not entitle him to any relief.

Second, Maldonado argues that trial counsel was ineffective for failing to investigate and obtain an expert witness to testify in support of his diminished capacity defense. Maldonado's Brief at 12-16. The PCRA court found that no relief was due on this claim because Maldonado had "failed to identify an expert who was available and willing to testify at his trial that he was incapable of forming the specific intent to kill due to the ingestion of drugs and/or alcohol." PCRA Court Opinion, 5/6/14, at 6. We disagree with the PCRA court deciding this issue in this manner, especially in light of the

fact that the PCRA court permitted appointed counsel to withdraw and appointed counsel's **Turner**/**Finley** letter does not provide any indication that he unsuccessfully attempted to find an expert to testify in such a manner. Nevertheless, because we may affirm a lower court on any basis, **Commonwealth v. Lewis**, 39 A.3d 341, 345 (Pa. Super. 2012),[3] we conclude that Maldonado is not entitled to any relief for his first ineffectiveness assistance of counsel claim.

Regarding this claim, Maldonado failed to prove the prejudice prong of the ineffective assistance of counsel test. Although Maldonado presented evidence that he had ingested alcohol and cocaine approximately eight to nine hours prior to shooting Reyes, the uncontroverted evidence in the certified record reveals that Maldonado was not intoxicated to the point of losing his faculties and sensibilities at the time of the shooting. **See Padilla**, 80 A.3d at 1263.

Eyewitness testimony of the shooting reflects the following. Maldonado and Reyes were arguing with each other in the diner when Maldonado said to Reyes, "you don't want to fuck with me." N.T., 7/7/08, at 160. Maldonado then proceeded to lift his shirt to show Reyes his gun. **Id.** at 159-60, 198-99. After Reyes told Maldonado that Maldonado was not scaring him, Maldonado shot Reyes in the head at point blank range. **Id.** at

---

[3] "We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm." **Lewis**, 39 A.3d at 345.

199-200. After shooting Reyes, as Maldonado was leaving the diner, he lifted his shirt and flashed his gun at the cashier who had picked up the phone in order to dial 911. *Id.* at 46. After exiting the diner, Maldonado ran from the scene and proceeded to get into a car and successfully drive away at a high rate of speed. N.T., 7/8/08, at 78-80. Witness testimony reveals that during the incident, Maldonado was walking normally and did not appear drunk or otherwise intoxicated. N.T., 7/7/08, at 56-57. In fact, prior to the shooting, Maldonado had the wherewithal and deftness to retrieve a toothpick from a toothpick dispenser. *Id.* at 56.

Thus, even if trial counsel had produced an expert to testify in support of Maldonado's diminished capacity defense, that evidence would have had to overcome the eyewitness testimony of Maldonado's behavior during the shooting, all of which revealed that he was entirely lucid, not intoxicated to the point of losing his faculties and sensibilities and indeed, quite deliberate in all of his conduct. Accordingly, we conclude that there was not a reasonable probability that the result of the proceeding would have been different had an expert testified in support of Maldonado's diminished capacity defense. *See Wantz*, 84 A.3d at 331, 333. Therefore, trial counsel's failure to call an expert witness did not prejudice Maldonado and this claim does not entitle him to any relief.

Finally, Maldonado argues that the PCRA court erred in allowing PCRA counsel to withdraw. Maldonado's Brief at 28-29. Maldonado contends that

the PCRA court should not have permitted PCRA counsel to withdraw because he has raised issues of arguable merit and has therefore denied him of his Sixth Amendment right to effective assistance of counsel. *Id.*

Rule 904(C) of the Pennsylvania Rules of Criminal Procedure provides that "when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief." Pa.R.Crim.P. 904(C). However, appointed counsel may file a "no-merit" letter and request leave to withdraw from representation. *See Turner*, 544 A.2d at 928-29; *Finley*, 550 A.2d at 214-15. Compliance with *Turner*/*Finley* procedure requires the following:

> [PCRA] counsel must … submit a "no-merit" letter to the trial court, or brief on appeal to this Court, [1] detailing the nature and extent of counsel's diligent review of the case, [2] listing the issues which the petitioner wants to have reviewed, [3] explaining why and how those issues lack merit, and [4] requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed pro se or by new counsel.
>
> If counsel fails to satisfy the foregoing technical prerequisites of *Turner*/*Finley*, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper *Turner*/*Finley* request or an advocate's brief.

> However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of **Turner**/**Finley**, the [court] must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007) (internal citations omitted).

Here, Maldonado argues that the PCRA court abused its discretion when it permitted PCRA counsel to withdraw "in a case where meritorious issues are present." Maldonado's Brief at 29. Based on our review of the issues raised on appeal and an independent review of the record, we disagree with Maldonado's contention that this case presents any meritorious issues. Accordingly, we conclude that the PCRA court did not err in permitting PCRA counsel to withdraw.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2015

- 12 -