J-S19029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMEY RAY HARTLESS, | |
| Appellant | No. 1578 MDA 2016 |

Appeal from the PCRA Order Entered August 30, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005125-2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 22, 2017**

Appellant, Jamey Ray Hartless, appeals from the post-conviction court's August 30, 2016 order denying his first petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.   Counsel has petitioned to withdraw pursuant to **Turner**/**Finley**.[1] After careful review, we affirm the court's order and grant counsel's petition to withdraw.

On December 2, 2013, Appellant, while under the influence of cocaine, alcohol, and lorazepam, lost control of his 1988 Chevrolet Camaro and crashed it into a tree, resulting in the death of passenger Timothy Hartless,

---

[*] Former Justice specially assigned to the Superior Court.

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

Appellant's brother. Just a few minutes before that accident, Appellant hit a stationary car on the side of the road, nearly injuring three persons standing around that disabled vehicle. Subsequently, Appellant was charged with seventeen criminal offenses, including third degree murder, homicide by vehicle, numerous driving under the influence of alcohol or controlled substance (DUI) offenses, reckless endangerment (3 counts), and several other motor vehicle code infractions related to both accidents. Immediately prior to trial, Appellant entered an open guilty plea to all charges except for third degree murder, which the Commonwealth had agreed to withdraw in exchange for his plea. On September 2, 2015, the trial court sentenced Appellant to an aggregate term of 8½-17 years' incarceration, the bulk of which came from a 5-10 year sentence for DUI-related homicide by vehicle. Appellant did not file a post-sentence motion or a direct appeal.

On April 13, 2016, Appellant filed a *pro se* PCRA petition. By order dated April 26, 2016, the PCRA court appointed counsel, Christopher Moore, Esq., to represent Appellant. Attorney Moore did not file an amended PCRA petition on Appellant's behalf. However, on August 30, 2016, a PCRA hearing was held to consider Appellant's claims, and he and his trial/plea counsel, Joshua Neiderhiser, Esq., testified. On September 29, 2016, the PCRA court issued an order and opinion denying the petition. PCRA Court Order and Opinion, 9/29/16, at 1-4 (hereinafter PCO).

Appellant filed a timely notice of appeal and a timely, court-ordered Pa.R.A.P. 1925(b) statement. In lieu of a Rule 1925(a) opinion, the PCRA

court filed notice that it would rely exclusively on the reasoning set forth in its September 29, 2016 order and opinion. Subsequently, on January 3, 2017, Attorney Moore filed a **Turner**/**Finley** no-merit letter and a separate petition to withdraw, wherein he asserted that Appellant's appeal lacks any meritorious issues for our review.

We must begin by addressing counsel's **Turner**/**Finley** letter and accompanying petition to withdraw as counsel. Pursuant to **Turner**/**Finley**, an "[i]ndependent review of the record by competent counsel is required before withdrawal [on collateral appeal] is permitted." **Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009).

As described by our Supreme Court, the requirements PCRA counsel must adhere to when requesting to withdraw include the following:

1) A "no-merit" letter by PC[R]A counsel detailing the nature and extent of his review;

2) The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;

3) The PC[R]A counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless[.]

**Id.** (citation omitted). "Counsel must also send to the petitioner: (1) a copy of the 'no-merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." **Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007) (citation omitted).

> [W]here counsel submits a petition and no-merit letter that do satisfy the technical demands of **Turner**/**Finley**, . . . this Court[] must then conduct its own review of the merits of the case. If the [C]ourt agrees with counsel that the claims are without merit, the [C]ourt will permit counsel to withdraw and deny relief. By contrast, if the claims appear to have merit, the [C]ourt will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

***Id.*** (citation omitted).

Instantly, we conclude that Attorney Moore has complied with the requirements of **Turner**/**Finley**. Specifically, in his **Turner**/**Finley** no-merit letter he details the nature and extent of his review, he addresses the claims Appellant raised in his PCRA petition and Rule 1925(b) statement, and he determines that the issues lack merit. ***See*** Turner/Finley letter, at 1-4 (unnumbered pages). Attorney Moore provides a discussion of Appellant's claims, explaining why they are without merit. Additionally, counsel served Appellant with a copy of the petition to withdraw and **Turner**/**Finley** no-merit letter, advising Appellant that he had the right to precede *pro se* or with privately retained counsel.[2]

_____

[2] In Attorney Moore's no-merit letter, he may have left the impression that Appellant's right to seek private counsel or proceed *pro se* was contingent upon this Court's granting of Attorney Moore's petition to withdraw. However, having identified this potential error, this Court issued an order on January 6, 2017, informing Appellant that he had a right to respond, *pro se* or through privately retained counsel, to counsel's no-merit letter and petition to withdraw. Accordingly, in the specific circumstances of this case, we find the **Turner**/**Finley** requirements have been satisfied. However, we advise Attorney Moore that, in the future, his **Turner**/**Finley** letters should clearly advise his client that the right to proceed *pro se* or with privately retained counsel in the **Turner**/**Finley** context is not contingent on the granting of his petition to withdraw.

We proceed, therefore, to conduct an independent merits review of Appellant's claim(s). In his response to the no-merit letter, Appellant raises a single issue which he believes to be meritorious despite Attorney Moore's suggestion to the contrary in the no-merit letter. Specifically, Appellant argues that his guilty plea colloquy "was not voluntary[,] but a mere parroting of [trial] counsel's attestments[,]" as "plea counsel … told … Appellant how and what to answer on various questions in the colloquy." Appellant's Response to Counsel's No-Merit Letter, 2/8/17, at ¶¶ 4-5 (unnumbered pages).

In the no-merit letter, Attorney Moore addressed a slight variation of this issue: Appellant's claim that his plea was involuntary because he lied during the guilty plea colloquy, by substituting trial counsel's answers for his own. Attorney Moore advised Appellant that this claim was not meritorious because the PCRA court "found your testimony not to be credible…." *Turner*/*Finley* No-Merit Letter, 12/27/16, at 3.

At the PCRA hearing, Appellant testified that he did not "remember a whole lot [about the guilty plea hearing] because it just happened so fast and I wasn't in my right state of mind." N.T., 8/30/16, at 6-7. He could not remember whether trial counsel or the court advised him of the minimum and maximum sentences he could receive for his offenses. *Id.* at 7-8. However, he claimed that trial counsel told him on the day of the plea that he was pleading to a term of 5-10 years' incarceration. *Id.* at 8-9. He could not recall if the trial court judge asked him any questions. *Id.* at 13.

Appellant repeatedly claimed he had difficulty with comprehension and memory. *Id.* at 11-12.

Then, during re-cross examination, the following exchange occurred:

Q. You just stated that you didn't understand what [trial counsel] was saying, correct?

A. Right.

Q. So during your plea when you told the judge that you didn't need any more time to talk to him and you said no, were you lying to the Court?

A. No. I was not in my right frame of mind. I didn't know what I was saying at the time.

Q. So when you told -- when the judge asked did you fill out this guilty plea form today and you said, yes, I did, now when the judge asked did you have any questions about anything that was asked of you on that form and you replied no --

A. There again, I was out of my mind and I didn't know exactly what was going on at the time. You had to be in my shoes to figure that out, to realize what really went on in my head.

Q. So I'm confused, Mr. Hartless. If you didn't understand what was going on and that's what you're telling us, why did you go through with the guilty plea?

A. I don't know why I did[], because I was being scared with a 20 to 40. I know that.

Q. That was a 20 to 40 on the third degree murder charge, correct?

A. Right.

Q. And you weren't pleading to that [that day]?

A. I wasn't – like I said, I wasn't in my right frame of mind and my thinking wasn't right.

Q. But you didn't tell anybody that you weren't thinking right?

A. No, because I was just out of my mind. I just was so lost that I didn't know what to do. I didn't know which way to turn. I was really hurt about, you know, putting my family through this, my father especially.

Q. I understand that, but again –

A. And I wasn't in my right mind.

Q. Sir, Sir.

A. Yes, ma'am.

Q. You weren't in your right mind. You didn't tell the Court that, though?

A. No, I didn't.

Q. You didn't tell your attorney that, did you?

A. I didn't think to say anything.

*Id.* at 17-19.

Trial counsel testified that during the pretrial and plea process, Appellant "was very easy to get along with, attentive, asked questions, seemed to understand everything." *Id.* at 21. He discussed with Appellant the permissible ranges of sentences for each offense he was facing. *Id.* at 22. Trial counsel also said he "sat down with [Appellant] and … went over each question [in the written guilty plea colloquy] point by point. His answers were I believe written by him, but I had read each question to him, [and] answered any questions he had." *Id.* at 30. Trial counsel specifically denied that he told Appellant that he would only be facing a 5-10 year sentence if he pled guilty. *Id.* at 23. Instead, he told Appellant that his "goal was to try to get everything to run concurrently so that he would only end up with five to ten." *Id.*

The PCRA Court determined:

> Without going over the testimony in great detail, suffice to say that to the extent that [Appellant]'s testimony contradicts that of trial counsel, we resolve the issue of credibility against [Appellant] given his apparent inability to remember what happened about the time of his trial, his plea[,] and his sentence.

PCO at 3.

We agree with Attorney Moore that Appellant's claim is meritless. Simply put, the PCRA court did not find Appellant's testimony at the PCRA hearing to be credible. The court also found credible trial counsel's testimony that Appellant had not merely parroted trial counsel's advice, but that the two had discussed Appellant's case at length, and that counsel had repeatedly and accurately responded to Appellant's inquiries about all relevant issues.

Moreover, our review of the record fails to uncover any other potentially meritorious issues which Appellant could raise in this appeal. Accordingly, we grant Attorney Moore's application to withdraw, and affirm the PCRA court's order denying Appellant's petition.

Order *affirmed*. Application to withdraw as counsel *granted*.

President Judge Emeritus Stevens joins this memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2017